IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-17-D

SCOTT G. BLACKMAN, )
)
Plaintiff, )
)
v. ) **ORDER**
)
BOSTON WHALER, INC., )
MARINE MAX EAST, INC., )
and BRUNSWICK PRODUCT )
PROTECTION CORPORATION, )
)
Defendants. )

On February 13, 2019, Scott G. Blackman ("Blackman" or "plaintiff") filed a complaint in New Hanover County Superior Court against defendants Boston Whaler, Inc. ("Boston Whaler"), MarineMax East, Inc. ("MarineMax"), and Brunswick Product Protection Corporation ("Brunswick") (collectively, "defendants") for relief under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. and relief under North Carolina law for breach of warranty, negligence, products liability, negligent misrepresentation, fraud, and unfair and deceptive trade practices in violation of N.C. Gen. Stat. §§ 75-1.1 et seq. [D.E. 1-35]. Blackman did not serve the complaint until December 30, 2021. See id. On January 28, 2022, defendants removed the action to this court based on federal question and diversity jurisdiction. See id. On March 25, 2022, Blackman filed an amended complaint [D.E. 21].[1] On April 22, 2022, defendants moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted and for failure to prosecute

---

[1] Defendants' motion to dismiss [D.E. 18] Blackman's complaint is dismissed as moot in light of Blackman's amended complaint.

[D.E. 23] and filed a memorandum in support [D.E. 24]. On May 23, 2022, Blackman responded in opposition [D.E. 26] and filed an affidavit in support [D.E. 27]. On June 6, 2022, defendants replied [D.E. 28]. As explained below, the court grants defendants' motion to dismiss for failure to state a claim upon which relief can be granted and dismisses with prejudice Blackman's amended complaint.

I.

On February 18, 2016, Blackman purchased a Boston Whaler Model 245 C Conquest boat from retailer MarineMax in Wrightsville Beach, North Carolina. See Am. Compl. ¶ 5. As part of the purchase, Blackman also purchased an extended service agreement with Brunswick. See id. On February 18, 2016, Blackman obtained possession of the boat. See id. at ¶ 6.

Following his purchase, Blackman returned his boat on "dozens of occasions" for repair, service, and replacement parts. Id. at ¶ 7. These repairs included fixing faulty electrical devices and wiring, replacing radio and navigation equipment, and resolving engine problems. See id. On June 23, 2018, Blackman's boat caught fire while moored in Southport, North Carolina. See id. at ¶ 8. Investigators determined that the cause of the fire was the "50 Amp Shore Power Cord Connection to the shore power '1' inlet connection of the vessel." Id. A Boston Whaler employee later inspected the vessel and found extensive fire damage to the inside and the outside of the vessel. See id. at ¶ 9. Blackman was not injured as a result of the fire, and the fire damaged no property other than the boat. See id. at ¶¶ 8–11.

II.

A.

Defendants argue that the court should dismiss the amended complaint as improper "shotgun pleading." See [D.E. 24] 6–9; Fed. R. Civ. P. 8(a). Rule 8(a) states: "[a] pleading that states a claim

2

for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Rule 8(a)'s requirements are calculated to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quotation omitted); Shepherd v. City of Shreveport, 920 F.3d 278, 287 (5th Cir. 2019); Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). Generally, "collective allegations are not prohibited by [Rule 8(a)]. Rather, the allegations must simply provide [d]efendants with fair notice of the claims against them." Walker v. Apex Wind Constr., LLC, No. CIV-14-914, 2015 WL 348778, at *3 (W.D. Okla. Jan. 26, 2015) (unpublished); cf. Davis v. Bowens, No. 1:11CV691, 2012 WL 2999766, at *3 (M.D.N.C. July 23, 2012) (unpublished) (holding that the complaint failed to comply with Rule 8(a) where the pleading failed to provide defendants with notice of the precise nature of the violations claimed against them).

Defendants argue that Blackman fails to distinguish among defendants in his amended complaint; therefore, Rule 8(a) requires the court to dismiss the amended complaint. See [D.E. 24] 6–9. Blackman's amended complaint, however, does not fail to provide defendants with fair notice of the claims against them. See, e.g., Walker, 2015 WL 348778, at *3. The amended complaint fairly notifies defendants of Blackman's eight claims. See Am. Compl. ¶¶ 13–66. As for defendants' contention that the amended complaint fails to allege enough facts against each defendant, the court will resolve that contention under Rule 12(b)(6) and not under Rule 8(a). Accordingly, the court denies defendant's motion to dismiss under Rule 8.

B.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566

3

U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

4

Blackman's breach of contract and warranty claims span different contracts. Therefore, in assessing Blackman's claims, the court analyzes each contractual relationship with each individual defendant separately.

1.

Defendants contend that Blackman cannot assert breach of contract or warranty claims against Boston Whaler for the sale of the boat or the extended service agreement due to lack of privity. See [D.E. 24] 8–15.[2] In terms of the Boston Whaler limited warranty, defendants assert that Boston Whaler adequately disclaimed all express and implied warranties in the contract. See id. at 11–13. Blackman responds that Boston Whaler wrote the Boston Whaler limited warranty documents that MarineMax provided to Blackman, the documents refer to boat purchasers as "our customer," and these statements create privity of contract. See [D.E. 26] 6; [D.E. 21-2]. Blackman also contends that there is a "genuine issue of fact based upon the languages [sic] set forth" in the Boston Whaler warranty. [D.E. 26] 8.

Under North Carolina law, privity of contract is generally required to assert an implied warranty claim. See, e.g., Terry v. Double Cola Bottling Co., 263 N.C. 1, 3, 138 S.E.2d 753, 754 (1964); Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc., 175 N.C. App. 339, 345, 623 S.E.2d 334, 339 (2006). Although North Carolina has abolished the privity requirement in certain situations, when a plaintiff asserts an implied warranty claim seeking only the recovery of economic loss, North Carolina requires privity of contract. See, e.g., Energy Invs. Fund, L.P. v. Metric Constructors, Inc., 351 N.C. 331, 338, 525 S.E.2d 441, 446 (2000); Atl. Coast Mech., 175

---

[2] All alleged contractual relationships arose in Wrightsville Beach, North Carolina. See Am. Compl. ¶¶ 5–6. Thus, North Carolina law applies to Blackman's contract claims. See Beal v. Coastal Carriers, Inc., 251 N.C. App. 1, 19, 794 S.E.2d 882, 893 (2016).

N.C. App. at 346, 623 S.E.2d at 339; Sharrard, McGee & Co., P.A. v. Suz's Software, Inc., 100 N.C. App. 428, 432, 396 S.E.2d 815, 817–18 (1990) ("[O]utside the exceptions created by [N.C. Gen. Stat. § 99B], the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss."); see also AT & T Corp. v. Med. Rev. of N.C., Inc., 876 F. Supp. 91, 95 (E.D.N.C. 1995).

Blackman and Boston Whaler are not in privity of contract regarding the sale of the boat and the extended service agreement. Although Boston Whaler manufactured the boat, Boston Whaler was not a party to the purchase agreement governing the boat's sale. See [D.E. 21-1]. Boston Whaler also was not a party to the extended service agreement. See [D.E. 21-3].

As for Blackman's argument regarding the "our customer" language in Boston Whaler's limited warranty [D.E. 21-2], this phrase alone in the limited warranty does not suffice to create either a contract for the boat or privity of contract. Likewise, this phrase does not create a factual dispute concerning whether Boston Whaler is a party to the purchase agreement for the boat. It is not. See [D.E. 21-1]. Accordingly, Blackman's contract claims against Boston Whaler regarding the sale of boat and the extended service agreement fail as a matter of law.

As for the Boston Whaler's limited warranty, Boston Whaler properly disclaimed the implied warranties alleged in the amended complaint. See Am. Compl. ¶¶ 13–38; cf. [D.E. 21-2]. Under North Carolina law, a party may disclaim the implied warranty of merchantability if the disclaimer specifically mentions "merchantability" and is displayed conspicuously. See N.C. Gen. Stat. Ann. § 25-2-316(2). Language to "exclude or modify" any implied warranty of fitness "must be by a writing and conspicuous." Id. Whether a disclaimer is conspicuous "is a decision for the court." Id. § 25-1-201(10). A disclaimer is conspicuous if it is "so written, displayed, or presented that a

6

reasonable person against which it is to operate ought to have noticed it." Id. Conspicuous terms include:

> a. A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> b. Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Id.; see Presnell v. Snap-On Securecorp, Inc., No. 1:20CV234, 2022 WL 295917, at *7–8 (M.D.N.C. Feb. 1, 2022) (unpublished); Billings v. Joseph Harris Co., 27 N.C. App. 689, 693–94, 220 S.E.2d 361, 365 (1975).

The disclaimer language in Boston Whaler's limited warranty complies with North Carolina law. Under the heading **"OTHER LIMITATIONS,"** the limited warranty states:

> EXCEPT AS SET FORTH HEREIN, THERE ARE NO OTHER WARRANTIES EITHER EXPRESS OR IMPLIED PROVIDED BY BOSTON WHALER ON THIS BOAT. ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE EXPRESSLY EXCLUDED.

[D.E. 21-2] 5 (capitalization and emphasis in original). The disclaimer also states: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS DISCLAIMED." Id. Boston Whaler conspicuously and by name disclaimed both warranties twice. See id. Thus, Boston Whaler validly disclaimed the implied warranties of merchantability and fitness for a particular purpose under N.C. Gen. Stat. Ann. § 25-2-316.

Blackman responds that even if Boston Whaler's limited warranty complies with N.C. Gen. Stat. Ann. § 25-2-316, the disclaimer is unconscionable. See [D.E. 26] 9. Blackman, however, does not plausibly allege that the limited warranty oppressed him or that Boston Whaler coerced him into accepting it as part of the purchase agreement. Blackman also does not plausibly allege that the

7

limited warranty is substantively unreasonable. Cf. Billings, 27 N.C. App. at 693–96, 220 S.E.2d at 365. Therefore, Boston Whaler has validly disclaimed the implied warranties of merchantability and fitness for a particular purpose. Accordingly, the court dismisses plaintiff's breach of contract and breach of warranty claims against Boston Whaler.

2.

Defendants contend that Blackman lacks privity with MarineMax regarding the limited warranty and the extended service agreement. See [D.E. 24] 16–17. Defendants also contend that MarineMax properly disclaimed all implied warranties in the purchase agreement. Id. Blackman disagrees. See [D.E. 26] 9.

Blackman fails to plausibly allege that MarineMax was in privity of contract with Blackman regarding the Boston Whaler limited warranty or the Brunswick extended service agreement. Moreover, in terms of the purchase agreement for the boat, the only agreement in which there is a contractual relationship, MarineMax validly disclaimed all implied warranties in the contract. The agreement conspicuously states:

> THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

[D.E. 21-1] 3. As with the disclaimer in the limited warranty, this language suffices to disclaim implied warranties under North Carolina law. See N.C. Gen. Stat. Ann. § 25-2-316. Thus, Blackman has not plausibly alleged a breach for the implied warranties of merchantability or fitness for a particular purpose against MarineMax. Accordingly, the court dismisses plaintiff's breach of contract and breach of warranty claims against MarineMax.

8

3.

Defendants contend that Blackman lacks privity with Brunswick regarding the purchase agreement and the Boston Whaler limited warranty. See [D.E. 24] 16–17. Blackman does not respond to defendants' arguments regarding Brunswick.

As for privity, Blackman fails to plausibly allege that Brunswick was party to either the purchase agreement or the Boston Whaler limited warranty. Blackman also fails to plausibly allege any other relationship that would establish privity. Thus, the court dismisses plaintiff's breach of contract and breach of warranty claims against Brunswick stemming from those contracts.

As for whether Blackman plausibly alleged that Brunswick breached its contractual obligations under the extended service agreement, [D.E. 19-2], the contract requires a beneficiary to file a claim in writing within 30 days of a mechanical breakdown. See id. at 11, 13. The contract also has a binding arbitration clause and a one-year time limit for arbitration after a dispute arises. Id. at 12.

Blackman alleges in the amended complaint that he gave "all appropriate notices to Boston Whaler, MarineMax, and/or Brunswick[.]" Am. Compl. ¶ 36. This statement does not plausibly allege that Blackman complied with the specific requirements of the Brunswick extended service agreement. For example, Blackman does not plausibly allege which mechanical breakdowns were covered by the "appropriate notices." In fact, the amended complaint states that Blackman did not report several mechanical issues to Brunswick at all. See Am. Compl. ¶ 11 ("there was an incident with the shore-power inlet connection point on the boat and photos are attached hereto and incorporated herein by reference in its entirety as EXG which were reported to both MarineMax and Boston Whaler"). Without more information about what Blackman provided in these notices,

9

Blackman fails to plausibly allege that these claims qualify for coverage under the extended service agreement.

As for the timing of any notice, Blackman attached as an exhibit to his response several email chains involving Brunswick employees. See [D.E. 27-2, 27-3, 27-4]. Blackman, however, does not plausibly allege that simply copying a Brunswick employee on an email chain satisfies the contract's notification requirements. See [D.E. 19-2] 11. Moreover, even assuming that such conduct suffices to provide notice, these emails were not exchanged within 30 days of the alleged mechanical breakdowns. Rather, the earliest email including a Brunswick employee was on August 10, 2018, which was 43 days after the fire destroyed the boat. See [D.E. 27-2] 3.

Blackman has not plausibly alleged a breach of contract claim against Brunswick regarding the extended service agreement. Thus, the court dismisses plaintiff's breach of contract claim against Brunswick.

III.

The court now addresses Blackman's claims under the Magnuson-Moss Warranty Act, state tort law, and the North Carolina UDTPA. North Carolina law applies to Blackman's state tort claims. See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988).

A.

Blackman claims in one conclusory paragraph that defendants violated the Magnuson-Moss Warranty Act ("MMWA"). See Am. Compl. ¶ 35; 15 U.S.C. §§ 2301 et seq. "The MMWA provides a federal remedy for breach of warranty." Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 76 (E.D.N.C. 2022); see Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 404–05 (7th Cir. 2004); Baldwin v. Jarrett Bay Yacht Sales, LLC, 683 F. Supp. 2d 385, 389 (E.D.N.C. 2009). The act "supplements, rather than supplants state law." Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 545 (D. Md. 2011);

10

see Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir. 1989). The provision creating a private cause of action states: "Subject to subsections (a)(3) and (e), a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[.]" 15 U.S.C. § 2310(d)(1). Under this provision, a plaintiff can "state a claim by alleging either a violation of the MMWA's substantive provisions or by satisfying the requirements for a state-law cause of action." Collette v. Sig Sauer, Inc., No. 21-11392-FDS, 2021 WL 6052613, at *5 (D. Mass. Dec. 21, 2021) (unpublished).

"To determine whether there has been a breach of a written or implied warranty in violation of the MMWA, courts must apply applicable state express and implied warranty law." Johnson v. Ford Motor Co., No. 3:13-6529, 2015 WL 7571841, at *16 (S.D.W. Va. Nov. 24, 2015) (unpublished); see Carlson, 883 F.2d at 291. Stated differently, "when the MMWA claim is premised on borrowed state-law warranty claims, MMWA claims stand or fall with the state-law claims." Sasso, 584 F. Supp 3d at 76 (cleaned up); see Carlson, 883 F. 2d at 291; Sandoval v. Pharmacare US, Inc., 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015); Doll, 814 F. Supp. 2d at 545.

Because Blackman failed to plausibly allege his state-law breach of warranty claims, his derivative MMWA claim fails. Accordingly, the court dismisses Blackman's MMWA claim.

B.

The amended complaint alleges claims for product liability, negligence, and negligent misrepresentation. See Am. Compl. ¶¶ 39–58. Defendants contend that the economic loss rule bars these tort claims. See [D.E. 24] 19–21. Blackman responds that the amended complaint pleads "breach of duties which were independent and beyond the contractual obligations." [D.E. 26] 15.

11

Alternatively, Blackman asks this court to delay dismissing these claims to seek a good-faith change in the law. See id. at 16–17.

Under the economic loss rule, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Braswell Egg Co., Inc. v. Poultry Mgmt. Sys., Inc., 481 F. Supp. 3d 528, 542 (E.D.N.C. 2020); Gen. Cas. Co. of Wis. v. Murphy-Hoffman Co., No. 5:20-CV-376, 2020 WL 6173547, at *2 (E.D.N.C. Oct. 21, 2020) (unpublished); CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550, 2019 WL 1083775, at *3 (E.D.N.C. Mar. 7, 2019) (unpublished); Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *2 (E.D.N.C. Mar. 24, 2011) (unpublished). The economic loss rule arises because "parties to a contract do not thereby become each others' fiduciaries; [therefore,] they generally owe no special duty to one another beyond the terms of the contract[.]" Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (quotation omitted); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

To pursue a tort claim and a breach of contract claim concerning the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (quotation omitted); see Broussard, 155 F.3d at 346; Strum v. Exxon Co., 15 F.3d 327, 330–31 (4th Cir. 1994); Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997); Paine, Webber, Jackson & Curtis, Inc. v. Stanley, 60 N.C. App. 511, 516–17, 299 S.E.2d 292, 295–96 (1983). Moreover, North Carolina courts have "carefully circumscribed" this independent duty requirement. Strum, 15 F.3d at 331. In so doing, North Carolina courts have strived to keep

12

tort and contract law (including law related to warranties) within their separate spheres. Cf. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986); Kelly, 671 F. Supp. 2d at 791.

North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk. See, e.g., 2000 Watermark Ass'n v. Celotex Corp., 784 F.2d 1183, 1186 (4th Cir. 1986) (applying South Carolina law); Kelly, 671 F. Supp. 2d at 791–96 (applying North Carolina law); Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753–54 (E.D.N.C. 2002) (applying North Carolina law); N.C. State Ports Auth., 294 N.C. at 81, 240 S.E.2d at 350. A loss falls into this rule when the only alleged damage or injury is to the product itself and not to any person or separate property. See B & B Crane Serv., LLC v. Dragados USA, Inc., No. 7:19-CV-98, 2019 WL 5295731, at *4 (E.D.N.C. Oct. 18, 2019) (unpublished); Kelly, 671 F. Supp. 2d at 791; Wilson, 206 F. Supp. 2d at 753.

Blackman's tort claims are rooted in his breach of contract and warranty claims. See Am. Compl. ¶¶ 39–58. Blackman has not alleged personal injury or damage to property other than the boat. See id. Likewise, Blackman has not plausibly alleged that defendants owed a separate duty of care, apart from any alleged contractual duty. See id. Because Blackman failed to allege these separate injuries and because these claims essentially repackage Blackman's warranty claim, the economic loss rule bars these tort claims.

Blackman's claims do not fall into the narrow exception to the economic loss rule involving a negligent misrepresentation claim. See Oestreicher v. Am. Nat. Stores, Inc., 290 N.C. 118, 136, 225 S.E.2d 797, 809 (1976); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275, 2011 WL 1134453, at *12 (E.D.N.C. Jan. 25, 2011) (unpublished), report and recommendation adopted, No.

13

5:07-CV-275, 2011 WL 1134447 (E.D.N.C. Mar. 24, 2011) (unpublished). Blackman has failed to plausibly allege that his negligent misrepresentation claim falls outside the scope of the contract to purchase the boat or the extended service agreement. Blackman also has not plausibly alleged that any alleged statements had "tort overtones" sufficient to overcome the economic loss rule. Silicon Knights, 2011 WL 1134453 at *12. Thus, the court dismisses Blackman's negligent misrepresentation claim.

Next, Blackman asserts that the economic loss rule does not bar independent tort claims. Accordingly, Blackman argues that his claims can proceed. See ITW Charlotte, LLC v. ITW Com. Constr., N. Am., a Div. of Ill. Tool Works, Inc., No. 317-cv-00473-DCK, 2017 WL 4768219, at *3 (W.D.N.C. Dec. 20, 2017) (unpublished). However, the independent tort must be "identifiable and distinct from a breach of contract claim[.]" Id. at *4. If the alleged tortious conduct arises from performance of or failure to perform a contract, including a warranty, then the tort does not constitute an "independent tort," and the economic loss doctrine bars the tort claim. ACS Partners, LLC v. Americon Grp., Inc., No. 3:09cv464-DSC, 2010 WL 883663, at *8 (W.D.N.C. Mar. 5, 2010) (unpublished). Because Blackman failed to plausibly allege a tort independent of the alleged breach of contract, Blackman's argument fails.

Alternatively, Blackman asks this court to "allow him to pursue . . . the product liability claims . . . as a good faith extension or modification of these product liability statutes and interpretive case law." [D.E. 26] 17. Blackman does not specifically note what law or theories he wishes the court to revisit or extend. Presumably Blackman invites the court to revisit the economic loss rule.

This court declines Blackman's invitation. See, e.g. 2000 Watermark Ass'n, 784 F.2d at 1186; Braswell Egg Co., Inc., 481 F. Supp. 3d at 542; Wilson, 206 F. Supp. 2d at 753–54. Sitting

14

in diversity, this court "should not create or expand a State's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (cleaned up); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999); First Protective Ins. Co. v. Rike, 516 F. Supp. 3d 513, 524–25 (E.D.N.C. 2021); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 575 n.1 (E.D.N.C. 2019). Thus, the court dismisses Blackman's product liability and other tort claims.

C.

Blackman asserts a fraud claim against all defendants. See Am. Compl. ¶¶ 59–61. Under Rule 9 of the Federal Rules of Civil Procedure, a party must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To state a fraud claim, a plaintiff must plausibly allege: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. See Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (1992); Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992); Terry v. Terry, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981); Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974); C.F.R. Foods, Inc. v. Randolph Dev. Co., 107 N.C. App. 584, 588–89, 421 S.E.2d 386, 388–89 (1992); Fitzgerald Fruit Farms, LLC v. Aseptia, Inc., 527 F. Supp. 3d 790, 798 (E.D.N.C. 2019); Salley v. Bank of Am., N.A., No. 5:13-CV-753, 2014 WL 2768660, at *5 (E.D.N.C. June 18, 2014) (unpublished). To meet the heightened pleading standard for fraud, the complaint must identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." First Protective Ins. Co., 516 F. Supp. 3d at 529 (quotation omitted) (collecting cases); see Edmonson v. Eagle Nat'l

Bank, 922 F.3d 535, 553 (4th Cir. 2019); Johnson v. Lendlease (US) Pub. P'ships, LLC, No. 7:21-CV-188, 2022 WL 2447091, at *14 (E.D.N.C. July 5, 2022) (unpublished).

Defendants contend that Blackman "does not identify any individual who allegedly made such representations, nor does he make any allegations regarding the time, date, or place of these alleged representations, beyond broadly asserting that they" took place in the last six years. [D.E. 24] 21–22. Blackman responds that he "has alleged all of the essential elements and the detailed factual basis to support such a claim." [D.E. 26] 15.

Blackman fails to identify any specific statements or false representations beyond vague conclusory allegations. See Am. Compl. ¶ 60. Blackman also does not specifically identify an officer, employee, or agent of the defendants who made these representations or fraudulent statements. See id. Finally, broadly alleging that these statements occurred sometime in the last six years does not establish the timing of the statements. Accordingly, the court dismisses Blackman's fraud claim.

D.

Blackman asserts a claim under North Carolina's UDTPA against all defendants. See Am. Compl. ¶¶ 62–66. The UDTPA declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1(a). To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. Kelly, 671 F. Supp. 2d at 798; SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); see Barbour, 361 F. Supp. 3d at 573. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive,

16

unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). "[I]t is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). However, a "mere breach of contract, even if intentional, is not an unfair or deceptive act." Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019); see Repress v. Crop Prod. Servs., Inc., No. 4:15-CV-00176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); Mitchell v. Linville, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001).

To state a claim based on alleged misrepresentations, a plaintiff must plausibly allege "reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88–89, 747 S.E.2d 220, 226 (2013); see Johnson, 2022 WL 2447091, at *15; Sasso, 584 F. Supp. 3d at 79. "Reliance, in turn, demands evidence showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Bumpers, 367 N.C. at 89, 747 S.E.2d at 227 (cleaned up); Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 478 (E.D.N.C. 2013).

Defendants contend that Blackman's UDTPA claim is "premised only upon vague allegations of contractual breaches and otherwise fails to plead any factual allegations supporting the claim." [D.E. 24] 25. Blackman responds that the amended complaint provides a "detailed factual basis in support to show the aggravating circumstances including the unfair, unethical, unscrupulous,

17

egregious, willful, wanton, intentional, deceptive acts, fraud, misrepresentation and malicious actions of the" defendants. [D.E. 26] 15. Blackman also argues that warranties can form the basis of a UDTPA claim. See [D.E. 26] 15; Sain v. Adams Auto Grp., Inc., 244 N.C. App. 657, 666, 781 S.E.2d 655, 661 (2016).

Blackman fails to plausibly allege a UDTPA claim. See Am. Compl. ¶¶ 63–66. Blackman does not plausibly allege that defendants made any direct statements to Blackman constituting an actual misrepresentation or omission. Moreover, the general factual allegations in the rest of the amended complaint involve simple breach of contract and warranty claims, which cannot by themselves support a UDTPA claim. See PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Repress, 2016 WL 3821163, at *5; Rider v. Hodges, 255 N.C. App. 82, 90–91, 804 S.E.2d 242, 249 (2017); Wells Fargo Bank, N.A. v. Corneal, 238 N.C. App. 192, 196–97, 767 S.E.2d 374, 377 (2014); Mitchell, 148 N.C. App. at 75, 557 S.E.2d at 623–24.

In opposition, Blackman cites Sain. See [D.E. 26] 16. Sain, however, does not help Blackman for at least two reasons. First, the plaintiff in Sain did not have a warranty that could have been breached given that he signed an "as-is no warranty" agreement. Sain, 244 N.C. App. at 666, 781 S.E.2d at 661. Second, the UDTPA claim in Sain stemmed from defendant's "alleged misrepresentation of the condition of the vehicle after purchasing it at auction." Id. In Sain, plaintiff's complaint included particular, specifically pleaded statements. Id. Blackman's amended complaint contains no such allegations. Accordingly, the court dismisses Blackman's UDTPA claim.[3]

---

[3] Defendants also moved to dismiss the amended complaint for failure to prosecute. See [D.E. 23]. Because the court dismisses the amended complaint for failure to state a claim upon which relief can be granted, the court does not reach defendants' arguments regarding failure to prosecute.

IV.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 23] and DISMISSES WITH PREJUDICE plaintiff's amended complaint. The clerk shall close the case.

SO ORDERED. This 5 day of January, 2023.

JAMES C. DEVER III
United States District Judge